IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STEVEN PALMER; SHAWN PALMER, and MOMS WELLNESS EMPORIUM, LLP, | CV 22-25-BLG-SPW-KLD |
| Plaintiffs, | FINDINGS & RECOMMENDATION |
| vs. | |
| CITY OF BILLINGS; STEVE HALLAM in his individual and official capacity; and JOHN DOES 1-10. | |
| Defendants. | |

Defendants City of Billings ("City") and Billings Police Department

Detective Steve Hallam, (collectively, "Defendants"), move to dismiss Plaintiffs'

Complaint for failure to state a claim upon which relief can be granted pursuant to

Federal Rule of Civil Procedure 12(b)(6). The Court recommends Defendants'

motion be granted in part and denied in part, for the reasons discussed below.

## I.    **Background**[1]

Plaintiffs are brothers, Steven and Shawn Palmer, and their joint-business venture, MOMS Wellness Emporium, LLP, a "natural healing center" located in Billings. (Docs. 1, ¶¶ 3, 10; 9-4, at 12). At the time of the events relevant to this dispute, Steven Palmer was a Helena resident and medical marijuana provider, doing business as Montana Organic Medical Supply ("MOMS"), which operated a cultivation facility near Emigrant and a dispensary located at 2918 Grand Avenue in Billings. (Doc. 1, ¶¶ 1, 10–11). Shawn Palmer lived in Billings and was the business manager at MOMS Wellness Emporium, which Plaintiffs claim was located "in the same building as MOMS but had a different address." (Docs. 1, ¶¶ 3, 11; 9-4, at 1, 6).

In June 2018, the Montana Department of Public Health and Human Services ("DPHHS") inspected MOMS' cultivation facility and dispensary. (Doc.

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions to dismiss, the following facts are taken from the Complaint (Doc. 1), evidence on which the Complaint necessarily relies, and court documents of which this Court may take judicial notice. In particular, the Court acknowledges there is a pending motion to consolidate this case with a separate action filed by Steven Palmer, doing business as Montana Organic Medical Supply ("MOMS"), challenging the validity of the same search warrant at issue here. Because the factual background in the two cases is nearly identical, these facts mirror, in large part, Judge Watters' order adopting U.S. Magistrate Judge Cavan's findings and recommendations on the City's motion to dismiss in *Palmer v. Mont. Dept. of Health and Human Servs.*, 2022 WL 457456, No. CV 21-38-BLG-SPW-TJC (D. Mont. Feb. 15, 2022) ("*MOMS I*").

1, ¶¶ 12–15). The Montana Medical Marijuana Program Registered Premise Inspection Report ("Inspection Report"), issued on July 25, 2018, noted several statutory and administrative violations, requiring MOMS to remedy the violations and provide proof that they had been rectified by September 18, 2018. (Doc. 1, ¶¶ 15–16).

On August 13, 2018, a DPHHS representative, accompanied by Billings Police officers, served the manager of MOMS' dispensary with an order revoking Steven Palmer's provider license ("Revocation Order"). (Doc. 1, ¶¶ 19–20). DPHHS also sent letters to 841 of MOMS' medical marijuana cardholders, advising them that they could no longer obtain medical marijuana from MOMS. (Doc. 1, ¶¶ 29–30). Plaintiffs state the practical effect of the Revocation Order was to immediately close MOMS. (Doc. 1, ¶ 31).

Following the revocation, on September 12, 2018, MOMS filed a petition for judicial review in Montana's Thirteenth Judicial District Court, Yellowstone County. (Doc. 1, ¶ 35). District Court Judge Harris granted a temporary restraining order, and subsequently issued findings of fact and conclusions of law determining the Revocation Order was unlawful and enjoined its enforcement. (Doc. 1, ¶¶ 36–38). Plaintiffs allege the parties later agreed that the case should be dismissed "to allow MOMS to pursue a damages action," and District Court Judge Davies dismissed the action without prejudice on March 8, 2019. (Doc. 1, ¶¶ 40–41).

3

Plaintiffs allege that the court's order did not mention the revocation of MOMS' license or the status of the injunction staying its enforcement. (Doc. 1, ¶ 41).

On March 12, 2019, DPHHS emailed the Billings Police Department, advising them that MOMS did not have a valid license to operate a medical marijuana dispensary. (Doc. 1, ¶ 42). On March 19, 2019, DPHHS further advised the Billings Police Department that MOMS' petition for judicial review had been dismissed and the Revocation Order was in effect. (Doc. 1, ¶ 45). DPHHS provided the Billings Police Department with a copy of the order from Judge Davies, which, Plaintiffs assert, explicitly states multiple times that the Revocation Order was "unlawful." (Doc. 1, ¶ 46).

That same day, police began surveilling MOMS and interviewed a number of individuals who were observed leaving the dispensary. (Doc. 1, ¶¶ 47–50). Based on the interviews, Detective Hallam applied for and was granted a warrant to search MOMS. (Doc. 1, ¶ 51). The warrant permitted Detective Hallam to search 2918 Grand Avenue, Billings, for, as relevant here, dangerous drugs as defined in Montana Code Annotated §§ 50-32-222, -224, -226, and -229, as well as precursors to dangerous drugs as defined in § 45-10-101, and any drug paraphernalia and "relevant items that specifically provide evidence of the above listed crimes." (Doc. 9-2, at 9).

Warrant in hand, Detective Hallam searched 2918 Grand Avenue, and the Billings Police Department seized marijuana products and personal property, allegedly including "CBD products and other non-dangerous drug health supplements and wellness products" belonging to MOMS Wellness Emporium. (Doc. 1, ¶¶ 55–57). Plaintiffs assert the warrant did not mention MOMS Wellness Emporium, nor did it permit police to seize non-drug related wellness products, such as CBD. (Doc. 1, ¶ 54). Plaintiffs allege that, at the time Detective Hallam applied for and received the search warrant, he knew or should have known MOMS' license revocation order had been invalidated; yet, in his warrant application, Detective Hallam testified to the court that the judge had upheld the Revocation Order and that MOMS was illegally selling marijuana without a license when that was not the case. (Doc. 1, ¶¶ 52–53).

On April 6, 2021, Steven Palmer, dba MOMS, filed *MOMS I*, asserting claims under 42 U.S.C. § 1983 against the State of Montana, DPHHS, and DPHHS employees Darci Wiebe and Jamin Grantham, (collectively, "State Defendants"), based on the revocation of his medical marijuana license (Count I), and against the City and Detective Hallam based on the search warrant (Count IX), as well as various state law claims (Counts II–VII, X–XII). *MOMS I*, at *2. On February 15, 2022, Judge Watters granted the City's and the State Defendants' respective motions to dismiss the claims against them but declined to dismiss the § 1983

claim against Detective Hallam for alleged judicial deception in obtaining the search warrant. *MOMS I*, at *3–5. Judge Watters was not persuaded by Detective Hallam's primary legal argument in that motion, that regardless of whether MOMS was authorized to sell marijuana under Montana law, there was probable cause for the warrant because marijuana is illegal under federal law. *MOMS I*, at *4.

On March 18, 2022, Plaintiffs initiated this action against Defendants for violations of their Fourth Amendment right to be free from unreasonable searches and seizures under the United States and Montana constitutions (Count I and II, respectively). (Doc. 1). In this case, Plaintiffs allege that Detective Hallam and the City unlawfully searched MOMS Wellness Emporium without a valid search warrant for that location, and alternatively, seized various items outside the scope of the warrant, including but not limited to CBD and other health and wellness products. (Doc. 1, ¶¶ 64–65, 71). Additionally, Plaintiffs assert state law claims for trespass (Count III) and conversion (Count IV), as well as punitive damages for Detective Hallam's violations of their federally protected rights.[2]

---

[2] Plaintiffs concede their state law trespass and conversion claims were raised more than two years after the alleged illegal search and seizure, exceeding the two-year statutes of limitations for those claims under Montana Code Annotated § 27-2-207(1) and (2). (Doc. 21, at 11). Accordingly, Defendants' motion to dismiss Counts III and IV should be granted.

Defendants filed the instant motion, arguing Plaintiffs' constitutional claims should be dismissed because they are premised upon the false assertion that MOMS Wellness Emporium is separate from MOMS. Defendants argue that because the two businesses shared a single location, they were not distinct establishments for Fourth Amendment purposes and the warrant was valid as to both MOMS and MOMS Wellness Emporium. Further, Defendants contend that Plaintiffs have offered no evidence to support their claim that any non-illicit, purely CBD items were seized, or that Detective Hallam had the requisite "evil motive or intent" to support an award of punitive damages. (Docs. 8, at 2; 23, at 10–11).

## II.   <u>Legal Standard</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) only when the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and construes the pleading in the light most favorable to the

nonmoving party. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

Dismissal under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a 12(b)(6) motion to dismiss, a plaintiff's complaint must contain sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Plausibility is context-specific, requiring courts to draw on judicial experience and common sense when evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

## III.   **Discussion**

### A. Evidentiary issues

As a general rule, a district court may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). When matters outside the pleadings are considered, the motion to dismiss under Rule 12(b)(6) is treated as one for summary judgment under Rule 56. See *Khoja*, 899 F.3d at 998; *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 921–22 (9th Cir. 2004).

There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998 (explaining the two exceptions). The incorporation-by-reference doctrine allows a court to consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

A court may take judicial notice of undisputed "matters of public record," including other state or federal court proceedings, *Lee*, 250 F.3d at 688–89; *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), as well as facts that are "not subject to reasonable dispute" because they are either "generally known within the

territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); Fed. R. Evid. 201(b). Courts may also take judicial notice of "records and reports of administrative bodies." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Interstate Nat. Gas Co. v. S. Cal. Gas. Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

As a threshold issue to this motion to dismiss, Plaintiffs argue Defendants improperly rely on exhibits not referenced in or central to the Complaint. Specifically, Plaintiffs contend that while the search warrant and search warrant application (Doc. 9-2) are properly incorporated by reference, the Inspection Report (Doc. 9-4), notice of non-compliance (Doc. 9-4, at 14), emails (Doc. 9-5), and a supplementary police report (Doc. 9-6) attached as exhibits to Defendants' motion to dismiss are "patently improper." Defendants counter that the Inspection Report is properly considered because it was referenced in the Complaint, is central to Plaintiffs' claim, and Plaintiffs do not contest the authenticity of the Inspection Report. Additionally, Defendants argue the Court may take judicial notice of Montana Secretary of State public business records refuting Plaintiffs' allegation that "[t]he Wellness Emporium was in the same building as MOMS but had a different address." (See Doc. 1, ¶ 11).

As to the Inspection Report and the attached notice of non-compliance, the Court agrees that Plaintiffs' Complaint repeatedly refers to the document. (Doc. 1, ¶¶ 15–18). Further, the Inspection Report is central to Plaintiffs' claim because it was the basis for the violations that preceded the Revocation Order and informed the subsequent surveillance and ultimate search of 2918 Grand Avenue. Moreover, neither party questions its authenticity. The Court concludes that the Inspection Report is properly considered in assessing the narrow question before the Court— whether Detective Hallam and the Billings Police Department unlawfully entered MOMS Wellness Emporium because their search warrant was only for MOMS' dispensary, an allegedly separate business with a different business address.

Additionally, the Court takes judicial notice of Montana Secretary of State online public records, a source from an administrative body "whose accuracy cannot reasonably be questioned." *MGIC Indem. Corp.*, 803 F.2d at 504; *Mack*, 798 F.2d 1279. A search for "MOMS Wellness Emporium" on the Montana Secretary of State online public records portal returns two domestic limited liability partnerships, "M.O.M.S WELLNESS EMPORIUM L.L.P. (P247245)," registered January 21, 2016, and expired January 21, 2021, and "moms wellness emporium LLP (P1220049)," registered May 27, 2021, currently active and in good standing; both showing a mailing address of 2918 Grand Avenue in Billings.

11

Christi Jacobsen, Montana Secretary of State, https://biz.sosmt.gov/search/business (Business Search for "MOMS Wellness Emporium") (last visited Feb. 28, 2023).

Accordingly, the Court will consider the Inspection Report and Montana Secretary of State public business records when assessing the sufficiency of Plaintiffs' Complaint under the standards applicable to a Rule 12(b)(6) motion to dismiss. As the Court finds that the search warrant, search warrant application, Inspection Report, and Montana Secretary of State records provide the Court with sufficient information to decide the issues as presented in Defendants' motion to dismiss, the Court need not consider the additional documents attached to Defendants' brief.[3]

### B. COUNT 1 – 42 U.S.C. § 1983 claim against Detective Hallam

Section 1983 provides a cause of action when state actors violate a federally protected constitutional right. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

---

[3] The Court notes, in particular, that it does not consider Defendants' Exhibit G (Doc. 9-7), October 23, 2020 correspondence from the Montana Secretary of State's office to M.O.M.S WELLNESS EMPORIUM, because that document is neither incorporated by reference nor properly considered under Rule 201(b).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). "The basic purpose of this Amendment, as recognized in countless decisions of [the Supreme Court of the United States], is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967).

"[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara*, 387 U.S. at 528 (citations omitted). "Just as the Fourth Amendment prohibits warrantless searches generally, so too does it prohibit a search conducted pursuant to an ill-begotten or otherwise invalid warrant." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

To satisfy the Fourth Amendment, a search warrant must describe with particularity the place to be searched and the items to be seized. *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1025–26 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004). Additionally, the Fourth Amendment generally "confines an officer executing a search warrant to the bounds set by the warrant,"

13

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394 n.7 (1971); however, a search warrant may include other buildings and objects within the curtilage of a searched location, "even if not specifically referenced" in the warrant. *United States v. Cannon*, 264 F.3d 875, 881 (9th Cir. 2011).

Here, Plaintiffs allege that, because MOMS' dispensary and MOMS Wellness Emporium were separate businesses with separate addresses, even with a valid warrant for MOMS, officers' search of MOMS Wellness Emporium was illegal. Plaintiffs further contend that, even if the search of the premises was permitted under the warrant for MOMS, officers exceeded the scope of that warrant by seizing non-illicit CBD products and other wellness products belonging to MOMS Wellness Emporium. Defendants argue that Plaintiffs' claims are based on the false assertion that MOMS Wellness Emporium is physically separate from MOMS. Because this is not true, Defendants assert, Plaintiffs' claims for unlawful search and seizure should be dismissed.

The Court agrees with Defendants that, while MOMS and MOMS Wellness Emporium, LLP are different legal entities, Plaintiffs' claim that they have different addresses is factually inaccurate. As discussed above, MOMS Wellness Emporium has a registered business address of 2918 Grand Avenue, Billings. The Inspection Report identifies the following locations associated with the registered premises for License Nos. P-00051 and D00032: (1) Steve Palmer Cultivation

14

Facility, 2896 U.S. Highway 89 S, Emigrant, MT 59027, and (2) MOMS

Dispensary, 2918 Grand Ave., Billings, MT 59102. (Doc. 9-4, at 1). MOMS'

dispensary premises are listed in the search warrant and warrant application as

"2918 Grand Ave, Billings." (Doc. 9-2, at 1, 8). The Inspection Report includes a

photo addendum entitled "MOMS Wellness Emporium: 6.15.18," depicting a

single entryway to a storefront that includes both business names incorporated into

one large sign. (Doc. 9-4, at 12). The Inspection Report further identifies both

Steven Palmer and Shawn Palmer as "Responsible Officials" for "MOMS

dispensary," labeling Shawn Palmer as the "Business Manager, DBA MOMS

Wellness Emporium." (Doc. 9-4, at 1).

Further, Plaintiffs allege no facts in their Complaint or Response to

Defendants' motion to dismiss that might indicate there was a physical or

otherwise obvious separation between the two businesses inside or outside the

premises at 2918 Grand Avenue. Nor do they directly address the discrepancies

between their statement that the two businesses have "different addresses" with the

evidence presented by Defendants indicating that the businesses share a physical

space, identical addresses, and phone numbers. Rather, in their Response Brief in

Opposition to Defendants' Motion to Dismiss, as an alternative to Plaintiffs'

evidentiary argument addressed above, Plaintiffs maintain that even if the Court

considers the attached documents, they demonstrate that MOMS is indeed separate

from the Wellness Emporium. Additionally, Plaintiffs argue that, by now asserting otherwise, Defendants improperly take a conflicting position with some of their admissions and statements in *MOMS I*.

Plaintiffs' arguments are unpersuasive. The Court finds that the Inspection Report and court documents together reflect that, in practice, neither Defendants, nor Plaintiffs, nor any of the other the individuals associated with MOMS and/or MOMS Wellness Emporium or DPHHS who are mentioned in the Inspection Report, apparently recognized the legal separation Plaintiffs claim invalidates the search warrant as to MOMS Wellness Emporium in this case.

For example, Plaintiffs point out that DPHHS identified "MOMS," not "MOMS Wellness Emporium," as the entity in non-compliance in the notice of non-compliance, dated May 10, 2018, and attached to the Inspection Report. (Doc. 9-4, at 14). Yet, in the Inspection Report itself, the DPHHS inspector stated, "On 5.10.18, *MOMS Wellness Emporium* was issued a notice of non-compliance relative to their documented advertising of marijuana and marijuana products via electronic media (Attachment 1)." (Doc. 9-4, at 2) (emphasis added). This apparent ambiguity makes sense when considering the DPHHS investigation into the MOMS Wellness Emporium's Facebook page and Montana Organic Medical Supply's website, discussed in the Inspection Report under a section entitled "pre-inspection activities." (Doc. 9-4, at 2). The Inspection Report shows advertising for

free "*in-house* private doctor consultation" at MOMS and a two-day free clinic for new medical marijuana green card patients, *hosted* at MOMS Wellness Emporium. (Doc. 9-4, at 2–3) (emphasis added). Both advertisements use the pronouns "we," "us" and "our," and direct prospective patients to schedule an appointment by calling (406) 252-6667, the phone number for MOMS Wellness Emporium, or by stopping by 2918 Grand Avenue in Billings, MOMS Wellness Emporium's address. (Doc. 9-4, at 2–3).

Additionally, the Inspection Report includes sections called "Description of MOMS Wellness Emporium Dispensary" and "MOMS Wellness Emporium Dispensary Inspection Details." (Doc. 9-4, at 4–6). The inspector's narrative describes inspectors entering "the establishment" and greeting and speaking with employees, including Shawn Palmer, who, according to the Inspection Report, introduced himself as the "MOMS business manager." (Doc. 9-4, at 5–6).

All told, the Court concludes that MOMS and MOMS Wellness Emporium, while separate legally, were in fact located at the same physical address, and the two business names were used collectively and so interchangeably by all parties and the public such that any legal warrant issued for MOMS would also logically apply to MOMS Wellness Emporium. The Court notes that it makes no finding as to the validity of the search warrant beyond its application to Plaintiffs in this case, as that question is being litigated in *MOMS I* and is not currently before the Court.

17

Finally, the Court finds the fact that Defendants' stipulations in *MOMS I* referred only to MOMS, or "MOMS dispensary," and "did not . . . mention the Wellness Emporium" does not amount to an inconsistency on the part of Defendants, but results from the fact that MOMS Wellness Emporium is not a party to that case, and any purported distinction between the two business entities is simply not relevant to that dispute.

To the extent that Plaintiffs separately allege Defendants' search exceeded the scope of the warrant when officers allegedly seized non-incriminating health products, the Court finds Plaintiffs' claims sufficient to survive this motion to dismiss. Plaintiffs plainly allege that Defendants seized "CBD products and other non-dangerous drug health supplements and wellness products," which were outside the scope of the search warrant. (Doc. 1, ¶¶ 56, 64–65, 71). While Defendants argue that Plaintiffs have not submitted any evidence proving this excessive search occurred, there is also nothing to indicate an excessive search is not plausible based on the thin factual record currently before the Court at this early stage in the proceedings.

Accordingly, assuming the truth of these allegations, as the Court must under Rule 12(b)(6), the Court finds Plaintiffs have adequately alleged a violation of their Fourth Amendment rights under the theory that Defendants' search exceeded the scope of the warrant by seizing non-incriminating health products.

18

## C. Count II – *Dorwart* claims against the City of Billings

In *Dorwart v. Caraway*, 58 P.3d 128 (Mont. 2002), the Montana Supreme

Court held that when a state actor violates a plaintiff's state constitutional right to

privacy under Article II, § 10, or right to be free from unreasonable searches and

seizures under Article II, § 11, the plaintiff may pursue a private cause of action for

money damages under these self-executing provisions of the Montana

Constitution. *Peschel v. City of Missoula*, 664 F. Supp. 2d 1149, 1159–60 (D.

Mont. 2009) (citing *Dorwart*, 58 P.3d at 136).

Plaintiffs allege that "the City of Billings violated these state constitutional

rights by engaging in an illegal search and seizure of the Wellness Emporium's

property." (Doc. 1, ¶ 71). Defendants argue Plaintiffs' claims should be dismissed

because, as the premises identified in the search warrant encompassed MOMS

Wellness Emporium, the search and seizure at 2918 Grand Avenue in Billings was

legal and proper and no constitutional violation occurred. However, this argument

fails to account for Plaintiffs' surviving allegations that Defendants exceeded the

scope of the search warrant, or acknowledge that the issue of judicial deception,

potentially invalidating the search warrant entirely, is still an open question being

litigated in *MOMS I*. Therefore, the Court finds this argument is without merit.

Defendants also argue that Plaintiffs' Count II should be dismissed because

their state constitutional allegations are adequately addressed in Counts III

(trespass) and IV (conversion). Citing *Suburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1093 (Mont. 2007), Defendants argue that "courts should critically consider the viability of a claim brought under the Montana Constitution when a concurrent claim under state law is also alleged." However, Defendants' argument is inapplicable here because the Court has determined that Plaintiffs' trespass and conversion claims should be dismissed as they were filed outside the relevant statute of limitations period under Montana law.

Accordingly, Defendants have not established that Plaintiffs' state constitutional claims against the City of Billings fail as a matter of law.

### D. Count V – Punitive damages

"A jury may award punitive damages under § 1983 if a defendant's conduct was driven by evil motive or intent, was malicious or oppressive, or when it involved a reckless or callous indifference to the constitutional rights of others." *Hernandez v. Skinner*, 383 F. Supp. 3d 1077, 1087 (D. Mont. 2019) (citing *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005); *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)). See also *Navarro*, 250 F.3d at 734 (holding that plaintiff plausibly alleged bad faith conduct of local legislators in § 1983 action, precluding a finding of qualified immunity on motion to dismiss).

Defendants move to dismiss Plaintiffs' punitive damages claim (Count V) because, Defendants argue, the Complaint is devoid of any allegations that

plausibly give rise to a finding that Detective Hallam's conduct was motivated by "evil motive or intent." Plaintiffs counter that dismissal is premature and the allegations in the Complaint state a plausible claim for punitive damages because a finding of evil motive or intent is not required, as a jury could find that Detective Hallam's actions—allegedly misrepresenting the status of MOMS' license and seizing items beyond the scope of the warrant—met any one of the above standards.

The Court agrees that dismissal of Plaintiffs' punitive damages claim is premature. Plaintiffs have alleged that Detective Hallam acted in bad faith in applying for and executing the search warrant for MOMS, presenting a cognizable legal theory for punitive damages under § 1983. Accordingly, Defendants' motion to dismiss Count V should be denied.

## V.    <u>Conclusion</u>

For the reasons discussed above,

IT IS RECOMMENDED that Defendants' Motion to Dismiss (Doc. 8) Counts III and IV be GRANTED, and be DENIED as to all other claims as discussed above.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.

DATED this 28th day of February, 2023.

Kathleen L. DeSoto
United States Magistrate Judge